UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE B. SMITH, III,** } | |
| } | |
| Petitioner, } | |
| } | |
| v. } | Case No.: 2:13-CV-00557-RDP |
| } | |
| **JEFFERSON S. DUNN, Commissioner,** } | |
| Alabama Department of Corrections, } | |
| } | |
| Respondent. } | |

## MEMORANDUM OPINION

This matter is before the court on the court's March 29, 2017 order (Doc. # 47), which reopened this action for the sole purpose of considering the effect of *Moore v. Texas*, 137 S. Ct. 1039 (2017) on the *Atkins* issue presented in this case. (*See* Doc. # 46 at 1-2). The issues raised in the court's order are fully briefed. (Docs. # 55, 56).

**I.    Background**

Petitioner filed this § 2254 action alleging that his conviction and sentence were secured in violation of his rights under the Constitution. (*See* Doc. # 1). Among other grounds for relief, Petitioner claimed that he is intellectually disabled, and as such, ineligible for the death penalty under the Eighth Amendment. (Doc. # 1-1 at ¶¶ 108-134). The court entered a Memorandum Opinion and Final Judgment on March 28, 2017, which denied his petition for writ of habeas corpus and dismissed the petition with prejudice. (*See* Docs. # 45, 46). The court granted Petitioner a certificate of appealability on the issue of whether the Alabama Court of Criminal Appeals unreasonably applied *Atkins v. Virginia*, 536 U.S. 304 (2002), in holding that Petitioner failed to prove that he was intellectually disabled, and, thus, ineligible for the death penalty. (Doc. # 46 at 1-2).

On March 29, 2017, the court reopened this action for the purpose of considering the effect of *Moore v. Texas*, 137 S. Ct. 1039, 197 L. Ed. 2d 416 (2017). (Doc. # 47). The court directed the parties to answer five questions in their briefing of the issue:

1. Whether *Moore*'s holding(s) constitute "clearly established Federal law" that must be applied by this court when reviewing whether the Alabama Court of Criminal Appeals issued a decision contrary to clearly established law or unreasonably applying clearly established law under 28 U.S.C. § 2254(d)(1). *Cf. Kilgore v. Sec'y, Florida Dep't of Corr.*, 805 F.3d 1301, 1310-12 (11th Cir. 2015) (concluding that *Hall v. Florida*, 134 S. Ct. 1986 (2014), established a new obligation on state courts in making intellectual disability determinations that was not clearly established by *Atkins v. Virginia*, 536 U.S. 304 (2002));

2. Whether *Moore* announced a new rule of constitutional law that must be applied retroactively to this case, pursuant to *Teague v. Lane*, 489 U.S. 288 (1989). *Cf. Kilgore*, 805 F.3d at 1312-15 (concluding that *Hall*'s holding did not fall under a *Teague* exception to non-retroactivity);

3. Whether the Alabama courts unreasonably applied clearly established federal law or issued a decision contrary to clearly established federal law by failing to apply an adjustment to Smith's credible IQ score to account for the test's standard error;

4. Whether the Alabama courts unreasonably applied clearly established federal law or issued a decision contrary to clearly established federal law by considering Smith's adaptive strengths when examining whether he had sufficient adaptive deficits to be deemed intellectually disabled; and

5. Whether the Alabama courts unreasonably applied clearly established federal law or issued a decision contrary to clearly established federal law by failing to identify a clinical medical standard that they used to determine intellectual disability, such as those located in the Diagnostic and Statistical Manual of Mental Disorders or the clinical manual issued by the American Association on Intellectual and Developmental Disabilities.

(*Id.* at 1-2).

## II.   The *Moore* Opinion

In *Moore*, the Supreme Court vacated the Texas Court of Criminal Appeals' judgment. *Moore,* 137 S. Ct. at 1044. Moore had challenged his death sentence on the ground that he was intellectually disabled and therefore exempt from execution. *Id.* While the state habeas court

determined that Moore qualified as intellectually disabled, the Texas appellate court declined to adopt the judgment recommended by the state habeas court.[1]  *Id.*  The appellate court reasoned that the evidentiary factors announced in *Ex parte Briseno*, 135 S.W.3d 1 (2004) "weigh[ed] heavily" against upsetting Moore's death sentence.  *Id.* (citing *Ex parte Moore*, 470 S.W.3d 481, 526 (2015)).  While the state habeas court consulted current medical diagnostic standards in making its recommendation, the appellate court reaffirmed *Briseno* as binding precedent on intellectual disability issues in Texas capital cases.  *Id.* at 1046 (citing *Ex parte Briseno*, 135 S.W.3d at 7).

Employing *Briseno*, the Texas appellate court discounted the lower end of the standard-error range associated with Moore's IQ scores, and determined that he had failed to prove significantly subaverage intellectual functioning.  *Id.*, at 1047 (citing *Ex parte Briseno*, 135 S.W.3d at 514-19).  The appellate court then reasoned that even if Moore had proven that he suffers from significantly sub-average general intellectual functioning, he failed to prove "significant and related limitations in adaptive functioning."  *Id.* (citing *Ex parte Briseno*, 135 S.W.3d at 520).  The appellate court credited Moore's adaptive strengths as more illustrative of his intellectual functioning than his adaptive weaknesses, and noted that the *Briseno* factors "weigh[ed] heavily" against finding that Moore's adaptive deficits were related to his intellectual functioning deficits.  *Id.* (citing *Ex parte Briseno*, 135 S.W.3d at 488-89, 522-27).

However, the Supreme Court granted certiorari and found that the state appellate court's adherence to superseded medical standards and its reliance on *Briseno* did not comply with either the Eighth Amendment or the Court's precedents.  *Id.* at 1053.  The Court held that the state appellate court's conclusion that Moore's IQ scores established that he was not intellectually

---

[1] Under Texas law, the CCA, not the court of first instance, is the "ultimate factfinder" in habeas proceedings.  *Moore*, 137 S.Ct. at 1044 n.2.

disabled was irreconcilable with its decision in *Hall*. *Id.* at 1049 (citing *Hall v. Florida*, 134 S. Ct. 1986, 2000 (2014)). *Hall* instructs that courts must account for an IQ test's "standard error of measurement," which the appellate court did not do.[2] *Id.*

The Court then held that the "[appellate court's] consideration of Moore's adaptive functioning also deviated from prevailing clinical standards and from the older clinical standards the court claimed to apply." *Id.* at 1050. Specifically, the Court faulted the Texas appellate court for overemphasizing Moore's perceived adaptive strengths, when the medical community focuses the adaptive-functioning inquiry on adaptive deficits. *Id.* Moreover, the Court faulted the appellate court for departing from clinical practice by improperly weighing Moore's past traumatic experiences and requiring Moore to show that his adaptive deficits were not related to "a personality disorder." *Id.* at 1051 (citing *Ex parte Moore*, 470 S.W.3d at 488, 526).

In its analysis, the Supreme Court condemned the use of the *Briseno* factors. *Id.* The *Briseno* court defined its objective as identifying the "consensus of Texas citizens" on who "should be exempted from the death penalty," reasoning that individuals with "mild" intellectual disability might be treated differently under clinical standards than under Texas' capital system. *Id.* (citing *Ex parte Briseno*, 135 S.W.3d at 6). However, the Court noted that those with "[m]ild levels of intellectual disability, although they may fall outside Texas citizens' consensus, nevertheless remain intellectual disabilities."[3] *Id.* Moreover, the Supreme Court recognized that

---

[2] The court stated that "Moore's score of 74, adjusted for the standard error of measurement, yields a range of 69 to 70, as the State's retained expert acknowledged. Because the lower end of Moore's score range falls at or below 70, the appellate court was required to consider Moore's adaptive functioning. *Moore*, 137 S.Ct. at 1049 (internal citations omitted).

[3] The Court noted that *Briseno* questions such as, "Did those who knew the person best during the developmental stage… think he was mentally retarded at that time, and, if so, act in accordance with that determination?" demonstrate the [appellate court's] improper emphasis on lay perceptions of intellectual disability, as opposed to medical and clinical standards. *Moore*, 137 S.Ct. at 1051-52.

4

no other state legislature approved the use of the *Briseno* factors, and Texas itself does not follow *Briseno* in contexts other than the death penalty.  *Id.* at 1052.

Accordingly, the Supreme Court held that:

> By rejecting the habeas court's application of medical guidance and clinging to the standard it laid out in *Briseno*, including the wholly nonclinical *Briseno* factors, the CCA failed adequately to inform itself of the "medical community's diagnostic framework," *Hall*, 572 U.S., at —— – ——, 134 S.Ct., at 2000. Because *Briseno* pervasively infected the CCA's analysis, the decision of that court cannot stand.

*Id.* at 1053.

### III.  Analysis

After careful review, the court concludes that Petitioner is not entitled to relief.

#### A.   *Moore* Does Not Constitute Clearly Established Federal Law Which Governed at the Time the State Court Rendered its Decision.

Under § 2254(d)(1), federal courts must uphold a state court decision unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  "'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court *at the time* the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (emphasis added).  Moreover, "[t]he Supreme Court has repeatedly held that only the actual holdings of its decisions can 'clearly establish []' federal law for § 2254(d)(1) purposes," and an opinion that merely "interprets" or "refines" a prior opinion does not constitute clearly established law under § 2254(d)(1).  *Kilgore*, 805 F.3d at 1310-11 (citing *Loggins v. Thomas*, 654 F.3d 1204, 122 (11th Cir. 2011)).

Petitioner concedes that *Moore* cannot be considered "clearly established Federal law" at the time the Alabama courts heard Smith's case.[4] (Doc. # 56 at 15). Indeed, *Moore*'s holding was not set forth on the date which the Alabama Court of Criminal Appeals issued its decision. *Smith v. State*, 112 So. 3d 1108, 1116 (Ala. Crim. App. 2012).

> *Atkins* held that the execution of intellectually disabled offenders is categorically prohibited by the Eighth Amendment. Notably, *Atkins* did not define intellectual disability, nor did it direct the states on how to define intellectual disability, nor, finally, did it provide the range of IQ scores that could be indicative of intellectual disability. Rather, *Atkin*s expressly left it to the states to develop "appropriate ways to enforce the constitutional restriction" on executing the intellectually disabled.

*Kilgore*, 805 F.3d at 1311 (citing *Atkins*, 536 U.S. at 317). By contrast, the Court's holding in *Moore* addressed Texas' standards for how to define intellectual disability. At most, *Moore*'s holding can be construed as an application of *Hall v. Florida*, 134 S.Ct. 1986 (2014). *See Moore*, 137 S.Ct. at 1044 ("As we instructed in *Hall*, adjudications of intellectual disability should be 'informed by the views of medical experts.'"); *Id.* at 1049 ("The [appellate court's] conclusion that Moore's IQ scores established that he is not intellectually disabled is irreconcilable with *Hall*."). However, this Circuit has held that *Hall* was not clearly established by *Atkins*. *Kilgore*, 805 F.3d at 1311. And *Hall* was not decided until after the Alabama Court of Criminal Appeals entered the relevant decision in this case. Accordingly, *Moore* does not constitute clearly established federal law which governed at the time the state court rendered its decision.

---

[4] To be clear, Petitioner's concession comes with two caveats. First, Petitioner "respectfully disagrees with the decision in *Kilgore*, but recognizes *Kilgore* is the controlling legal authority in the Eleventh Circuit." (Doc. # 56 at 14). Second, the Supreme Court recently granted *certiorari*, vacated judgment and remanded two cases back to the Fifth Circuit "for consideration in light of *Moore*." *Martinez v. Davis*, 581 U.S. ___ (2017) (No. 15-7974); *Henderson v. Davis*, 581 U.S. ___ (2017) (No. 16-6445). Petitioner contends that the court should consider *Moore* as clearly established law to the extent that the two remands (referenced above) might be construed as a finding that *Moore* constituted clearly established federal law as of May 25, 2012. (Doc. # 56 at15 n. 2).

**B.     *Moore* Did Not Announce a New Rule of Constitutional Law that Must Be Applied Retroactively**

A petitioner is not entitled to federal habeas relief when he relies on a "new rule" of federal law, unless certain exceptions are met. *Kilgore*, 805 F.3d at 1312 (citing *Lambrix v. Singletary*, 520 U.S. 518, 527 (1997)). "[A] case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989). New *substantive* rules generally apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004). And "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding" apply retroactively. *Id.* (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990)).

Here, Petitioner argues that *Moore* announced a new substantive rule which should apply retroactively. "Substantive rules include 'rules forbidding criminal punishment of certain primary conduct,' as well as 'rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Montgomery v. Louisiana*, 136 S. Ct. 718, 728, 193 L. Ed. 2d 599 (2016) (citing *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989); *Teague*, 489 U.S. at 307). Petitioner contends that *Moore* should apply retroactively because "the same person engaging in the same conduct is no longer subject to" the punishment at issue. *Welch v. United States*, 136 S.Ct. 1257, 1265 (2016). The court disagrees.

First, *Kilgore*'s analysis regarding the retroactivity of *Hall* is instructive here:

Since *Hall*'s holding undeniably is "new," we turn to Kilgore's claim that it meets the first *Teague* exception—that it prohibits the imposition of a certain type of punishment for a class of defendants because of their status or offense. Applying this exception, the Supreme Court has said that a rule prohibiting "the execution of [intellectually disabled] persons ... would be applicable to defendants on collateral review" because "a new rule placing a certain class of individuals beyond the State's power to punish by death is analogous to a new rule placing certain conduct beyond the State's power to punish at all." *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Thus, when *Atkins* later

7

> held that "an exclusion for the [intellectually disabled] is appropriate," 536 U.S. at 319, 122 S.Ct. 2242, we recognized that *Atkins* established a new rule of constitutional law. We concluded that "the new constitutional rule abstractly described in *Penry* and formally articulated in *Atkins* is retroactively applicable to cases on collateral review." *In re Holladay*, 331 F.3d at 1173.
>
> But the same result does not hold true for *Hall*, which merely provides new procedures for ensuring that states follow the rule enunciated in *Atkins*. As we held in *In re Henry*, *Hall* did not expand the class of individuals protected by *Atkins*'s prohibition. *In re Henry*, 757 F.3d at 1161. Rather, *Hall* created a procedural requirement that those with IQ test scores within the test's standard of error would have the opportunity to otherwise show intellectual disability. *Hall* guaranteed only a chance to present evidence, not ultimate relief. Therefore, as we recognized in *In re Henry*, *Penry* in no way dictated that the rule announced in *Hall* is retroactive to cases on collateral review. *See id.*

*Kilgore*, 805 F.3d at 1314. *Kilgore*'s analysis of *Hall* applies equally here. In *Moore*, the Supreme Court dealt with the "procedural requirement[s]" associated with the Texas appellate court's determination of a petitioner's disability – it did not expand the class of individuals protected by *Atkins*. As with *Hall*, *Moore* did not guarantee relief for a new class of individuals not previously protected by *Atkins*. To the contrary, *Moore* condemned the particular procedure and analysis used by the Texas appellate court, and held that courts must account for a test's "standard error of measurement" and make intellectual disability determinations which are informed by the medical community's diagnostic framework. *Moore*, 137 S.Ct. at 1048-53.

Second, to the extent that *Moore* is viewed as an application of *Hall*, it cannot apply retroactively. As addressed above, the Court, in *Moore*, cited *Hall* in support of its holdings.[5] *See id.* at 1044 ("As we instructed in *Hall*, adjudications of intellectual disability should be 'informed by the views of medical experts.'"); *Id.* at 1049 ("The [appellate court's] conclusion that Moore's IQ scores established that he is not intellectually disabled is irreconcilable with

---

[5] The findings that (1) *Moore*'s holding was not clearly established law at the time of the Alabama Court of Criminal Appeals' ruling, and (2) *Moore* can be viewed as an application of *Hall* are not contradictory. As addressed above, *Hall* was decided *after* the Alabama Court of Criminal Appeals rendered its operative decision.

*Hall*."). And, this Circuit has already held that *Hall* does not apply retroactively. *Kilgore*, 805 F.3d at 1316.

Finally, *Moore* did not announce a "watershed" rule which would fall under *Teague*'s second exception to non-retroactivity.[6] "To fall within this exception, a new rule must meet two requirements: Infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction, and the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S. 656,665 (2001) (quotation and emphasis omitted). This exception "is so tight that very few new rules will ever squeeze through it." *Howard v. United States*, 374 F.3d 1068, 1080 (11th Cir. 2004). As our Circuit has recognized, "[t]he presentation of evidence by a defendant seeking to establish intellectual disability does not meet this standard." *Kilgore*, 805 F.3d at 1314. Accordingly, *Moore* does not meet any of the *Teague* exceptions to non-retroactivity, and does not apply retroactively in this case.

### C. The Alabama Courts Did Not Unreasonably Apply Clearly Established Federal Law or Issued a Decision Contrary to Clearly Established Federal Law

Because *Moore* was not clearly established federal law at the time the Alabama Court of Criminal Appeals entered its decision, and because *Moore* does not apply retroactively, the state courts did not unreasonably apply clearly established federal law in failing to consider "margin of error" when examining Petitioner's IQ score. As addressed in the court's March 28, 2017 opinion, *Atkins* does not prohibit such a determination, and only when *Hall* was decided did federal law "change[] course" by requiring states to recognize a margin of error when assessing IQ scores. (Doc. # 45 at 56 (citing *Kilgore*, 805 F.3d at 1311)). While *Moore* cited *Hall* for the

---

[6] Petitioner does not argue that *Moore* announced a "watershed" procedural rule. (*See generally* Doc. # 56). However, having found that any new rule announced by *Moore* is procedural rather than substantive, the court addresses the second *Teague* exception.

9

premise that the Texas appellate court erred by failing to account for the IQ test's standard error of measurement, *Moore*, 137 S.Ct. at 1049, federal law imposed no such obligation on the Alabama Court of Criminal Appeals at the time it rendered its decision.  Accordingly, *Moore* provides no relief to Petitioner with respect to the state court's determination not to account for standard error of measurement.

Similarly, the state court did not unreasonably apply clearly established federal law by considering Petitioner's adaptive strengths when examining whether he had sufficient adaptive deficits.  In *Moore*, the Court faulted the lower court for "overemphasiz[ing] Moore's perceived adaptive strengths."  *Moore*, 137 S.Ct. at 1050.  The Court noted that "the medical community focuses the adaptive-functioning inquiry on adaptive *deficits*," and referenced *Hall* for the proposition that the intellectual-disability determination must be "informed by the medical community's diagnostic framework.  *Id.* at 1048, 1050.  However, as addressed above, the Alabama courts were not bound by this holding at the time they heard Petitioner's case, and the holding is not retroactive.

Moreover, the Alabama Court of Criminal Appeals' holding is distinguishable from the situation presented in *Moore*.  *Moore* did not condemn *any* reference to adaptive strengths included in the intellectual-disability analysis, and instead only noted the medical community's emphasis on deficits in adaptive functioning and cautioned against overemphasis of perceived adaptive strengths.  Here, the parties presented the state courts with conflicting test scores regarding Petitioner's adaptive functioning.  (State Court Record, Vol. 34, Tab-74 at 7-9).  In light of this conflicting evidence, it was reasonable for the Alabama Court of Criminal Appeals to look to Petitioner's demonstrated adaptive abilities (or lack thereof) to reconcile the test scores and determine which ones were credible.  Such a determination does not run afoul of *Moore*.

Finally, the state court did not unreasonably apply clearly established federal law by failing to identify the clinical medical standard used to determine intellectual disability. As addressed above, *Moore* was not clearly established federal law at the time of the Alabama courts' decisions, and does not apply retroactively in this case. Moreover, *Moore* imposes no specific requirement that courts identify the clinical medical standard that they apply – it simply requires that a court's determination must be "informed by the medical community's diagnostic framework." *Moore*, 137 S.Ct. at 1048 (quoting *Hall*, 134 S.Ct. at 2000). Indeed, the *Briseno* factors addressed in *Moore* were in many ways unique. The factors sought to identify the "consensus of Texas citizens" on who "should be exempted from the death penalty." *Id.* at 1051 (citing *Briseno*, 135 S.W.3d at 6). The Alabama courts did not operate under such a standard, and even if *Moore* applied to analysis of this case (and, to be sure, it does not) the court cannot say that state courts unreasonably applied clearly established federal law.

## IV.   Conclusion

Smith's petition, which the court reopened for limited consideration, is due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this July 21, 2017.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE