UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIE B. SMITH, III,** } | |
| } | |
| Petitioner, } | |
| } | |
| v. } | Case No.: 2:13-cv-00557-RDP |
| } | |
| **JEFFERSON S. DUNN, Commissioner of** } | |
| **the Alabama Department of Corrections,** } | |
| } | |
| Respondent. } | |

## MEMORANDUM OPINION

This case is before the court on Petitioner's Motion to Alter or Amend Judgment. (Doc. # 59). Petitioner asks the court to reconsider several of its rulings made in denying his 28 U.S.C. § 2254 habeas petition. Petitioner also asks the court to reconsider its decision to only grant a certificate of appealability on one issue. After careful review, and for the reasons explained below, Petitioner's Motion to Alter or Amend Judgment is due to be denied.

**I.     Standard of Review**

Rule 59 allows a party to move to alter or amend a judgment in a civil case. Fed. R. Civ. P. 59(e). *Serrano v. United States*, 411 F. App'x 253, 255 (11th Cir. 2011) (citing Fed. R. Civ. P. 59(e)). "Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59." *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). The moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling. "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (internal citations and quotations omitted).

Courts have identified three grounds for granting a motion to alter or amend a judgment: "1) an intervening change in controlling law; 2) the availability of new evidence; or 3) the need to correct clear error or prevent manifest injustice."[1] *Offices Togolais Des Phosphates v. Mulberry Phosphates, Inc.*, 62 F. Supp. 2d 1316, 1331 (M.D. Fla. 1999). Petitioner relies on purported manifest errors of law or fact to support his requests for reconsideration. Therefore, Petitioner must show a clear error of fact or manifest error of law in the underlying judgment. With this in mind, the court turns to the arguments presented in Petitioner's Rule 59(e) motion.

**II.    Analysis**

After careful review, the court concludes that none of Petitioner's arguments merit altering or amending the court's judgment.

**A.    Petitioner Has Presented No Manifest Error in the Denial of His *Batson* Claims**

With regard to the court's denial of relief in connection with Petitioner's *Batson* claims, Petitioner first argues that the court manifestly erred by finding that Petitioner's prima facie showing of discrimination was weakened because the petit jury ultimately contained five women. (Doc. # 59 at 8-9). The court finds no error -- much less a manifest error -- in that determination. Indeed, the Eleventh Circuit has held that the composition of the ultimate jury is a relevant circumstance, among other relevant circumstances, to be considered in determining whether a *Batson* violation occurred. *Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1224-

---

[1] In the words of the Honorable William H. Steele of the Southern District of Alabama:

> Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license to move for reconsideration, vacatur, alteration or amendment as a matter of course, and to utilize that motion as a platform to criticize the judge's reasoning, to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a "do-over" to erase a disappointing outcome. This is improper.

*Garrett v. Stanton*, 2010 WL 320492, at *2 (S.D. Ala. Jan. 18, 2010). Most of Petitioner's arguments seek a "do-over." Nevertheless, for completeness, the court addresses those arguments.

25 (11th Cir. 2013) (holding that "[i]t was not unreasonable" for a state appellate court to hold that the state did not commit a *per se Batson* violation when it used all 21 peremptory strikes on black veniremembers where the ultimate jury contained 9 black jurors). The court did not manifestly err by determining that the ultimate composition of Petitioner's petit jury was a factor that weighed against the strength of his prima facie showing of gender discrimination.[2]

Second, Petitioner insists that the court committed manifest error by accepting the prosecution's non-discriminatory explanations for its peremptory strikes. (Doc. # 59 at 9-12). Petitioner insists that "a thorough *Batson* analysis was never conducted." (*Id.* at 10). The court is not certain that Petitioner's argument is founded upon the correct standard of review. But, here, that is an academic matter, at best. The court has conducted a thorough analysis of the *Batson* arguments presented by Petitioner. (*See* Doc. # 45 at 9-29). Petitioner reiterates in his motion that the prosecution offered pretextual justifications for strikes based on church affiliation. (Doc. # 59 at 10-11). But, as the court explained at length in its Memorandum Opinion (Doc. # 45 at 14-18), the prosecution's basis for those strikes was supported by the record, and Petitioner failed to present strong side-by-side comparisons between female veniremembers that the prosecution struck and veniremembers that it did not strike. No error -- much less a manifest error -- exists in that ruling.

Third, Petitioner argues that the state cannot refute the discriminatory nature of its strike against veniremember Lourdes Ramos because it struck the only Latina member of the venire pool. (Doc. # 59 at 12). As the court explained in its Memorandum Opinion, at a minimum, the Court of Criminal Appeals reasonably found no prima facie case of intentional discrimination

---

[2] To be clear, in its earlier Memorandum Opinion, the court expressly recognized the Alabama Court of Criminal Appeals' finding that Petitioner established a prima facie showing of purposeful discrimination with regard to her gender-based *Batson* claim. (Doc. # 45 at 12). The court's analysis of the *Batson* issue fully credits that finding.

3

against Hispanic jurors because (1) there was no pattern of strikes against multiple jurors, and (2) Petitioner identified no history of discrimination against Hispanic jurors.[3] (Doc. # 45 at 26). Petitioner presents no clearly established law from the United States Supreme Court demonstrating that a pattern of discriminatory strikes can be discerned from a solitary strike.[4] (*See* Doc. # 59 at 12). And, while Petitioner claims that age is a suspect and unacceptable reason for striking a juror, the federal-court authority he cites to support that argument says no such thing. *See, e.g.*, *Snyder v. Louisiana*, 552 U.S. 472, 482-83 (2008) (addressing the credibility of a strike justification based on the veniremember's student teaching obligations); *Miller-El v. Dretke*, 545 U.S. 231, 241-48 (2005) (addressing the credibility of a strike justification based on a veniremember's opinions on the death penalty); *Adkins v. Warden, Holman CF*, 710 F.3d 1241, 1257-58 (11th Cir. 2013) (explaining that age "may be [a] facially race-neutral" reason for a strike, but finding that the strikes at issue could not be justified on the basis of age because the prosecution used age-related reasons to justify strikes of people ranging in age from 31 to 86

---

[3] The Court of Criminal Appeals also referenced the lack of any indication to discriminate in the prosecution's *voir dire* questioning and the trial court's finding that the prosecutor was not intending to discriminate as factors weighing against any prima facie showing of discrimination with regard to the national-origin *Batson* claim. *Smith v. State*, 838 So. 2d 413, 466 (Ala. Crim. App. 2002). The Court of Criminal Appeals was allowed to consider these factors in determining whether Petitioner had made a prima facie case of purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986) ("In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. . . . [T]he prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose.").

[4] Petitioner cites one case where the Eleventh Circuit reversed a district court's determination that a defendant could not establish a prima facie case of purposeful discrimination without evidence "of a systematic discriminatory use of peremptory challenges." *United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir. 1989). The prosecution in *Horsley* used a peremptory strike against the sole black veniremember. *Id.* at 1543-44. But that decision is of no help to Petitioner here because two circumstances distinguish the present case from *Horsley*. First, the Eleventh Circuit in *Horsley* considered a direct appeal from a federal district court's *Batson* ruling. In this case, however, this court can only review whether the Alabama Court of Criminal Appeals reasonably applied clearly established federal law as established by the U.S. Supreme Court – not the Eleventh Circuit. 28 U.S.C. § 2254(d)(1). *See also Briggs v. Grounds*, 682 F.3d 1165, 1177 n. 12 (9th Cir. 2012) (distinguishing *Horsley* from the appeal of a denied § 2254 habeas petition on the basis "that a less deferential standard of review applied there, as *Horsley* was a direct appeal"). Second, in *Horsley*, the prosecution provided a "legally insufficient" justification for its strike based on the prosecutor's "feeling" about the veniremember. *Horsley*, 864 F.2d at 1546. In contrast, the prosecution in this case provided legally sufficient justifications for striking Ramos, and the court has already squarely addressed Petitioner's arguments against those justifications in its Memorandum Opinion. (Doc. # 45 at 27-28).

years old); *United States v. Diaz*, 26 F.3d 1533, 1543 (11th Cir. 1994) (addressing, on direct appeal, a prosecutor's reason for a strike based on demeanor); *United States v. Horsley*, 864 F.2d 1543, 1546 (11th Cir. 1989) (addressing a vague strike justification based on the prosecutor's feeling about the veniremember). For these reasons, Petitioner has presented no manifest error in the court's adjudication of the *Batson* claims warranting Rule 59(e) relief.

> **B.  Petitioner Has Presented No Manifest Error in the Denial of His Haldol Administration Claims**

With regard to the denial of his Fifth and Sixth Amendment claims regarding Haldol administration, Petitioner argues that the court failed to grant appropriate deference to the state courts' factual findings. (Doc. # 59 at 14). But, in its Memorandum Opinion, this court expressly discussed the state court's finding that Petitioner had received Haldol during the trial. (Doc. # 45 at 31). The court's comment regarding the lack of "conclusive evidence" for Petitioner's Haldol use during trial (*id.* at 30) did not overrule the relevant factual finding of the state court. Indeed, as the Memorandum Opinion recounted, the state trial court itself "observed that it was 'not clear that the Defendant actually took Haldol.'" (Doc. # 45 at 35) (quoting State Court Record, Vol. 34, Tab R-74 at 11). Thus, on this habeas review, this court simply observes that while there was some question as to whether Haldol was actually administered to Petitioner the state court found it was.[5] To be sure, this court gives (and gave) complete deference to that finding. Thus, this portion of Petitioner's argument points to no error -- much less a manifest error -- in the Memorandum Opinion.

Petitioner also argues that this court placed too much weight on his failure to object to the administration of Haldol at trial because he was intellectually disabled at the time of trial. (Doc. # 59 at 14-15). But this argument has no effect on the central issue that led the court to deny

---

[5] In reviewing on habeas the state court's rulings, this court finds it relevant that the state court resolved this fact issue in Petitioner's favor even though it was disputed.

Petitioner's Fifth and Sixth Amendment claims: the lack of an objective factor external to Petitioner's defense that demonstrated cause for his procedural default of the claims. (*See* Doc. # 45 at 33-36). To the extent Petitioner suggests that his attorneys should not have relied on his self-recollection of medicines he used, the court notes that the doctors who examined Petitioner before the penalty phase also did not perceive symptoms of Haldol administration. (Doc. # 45 at 69) (citing State Court Record, Vol. 34, Tab R-74 at 11). And, this argument ignores the well-established standard that any analysis of counsel's choices and conduct in representing a defendant "critically" depends on the information provided to counsel by the defendant. *Chandler v. United States*, 218 F.3d 1305, 1318-19 (11th Cir. 2000) (*en banc*) (citing *Strickland v. Washington*, 466 U.S. 668, 691 (1984)). Accordingly, Petitioner's failure to mention the administration of medication to his attorneys is a relevant factor weighing against his arguments that counsel rendered ineffective assistance to him.

Petitioner reiterates that he presented sufficient cause for his default of the Haldol-related claims because the state either defectively maintained or concealed records that would have supported the claims. (Doc. # 59 at 16-17). The court thoroughly considered and rejected this argument in its Memorandum Opinion due to the lack of supporting evidence. (*See* Doc. # 45 at 34-35). Petitioner's attempt to re-litigate this issue in a Rule 59(e) motion is meritless. *Arthur*, 500 F.3d at 1343.

> C. **Petitioner Has Presented No Manifest Error in the Denial of His Ineffective Assistance of Counsel Claim Regarding Haldol Administration**

With regard to the denial of his ineffective assistance claims, Petitioner argues that any reasonable defense attorney would have thoroughly investigated his mental condition, and that such a reasonable investigation would have either "discovered the presence of Haldol" or "found and preserved the medical records relating to [Petitioner's] treatment during the trial." (Doc. #

6

59 at 18-19). Of course, this argument does little more than repeat what was already presented in Petitioner's habeas filings. (Doc. # 1-1 at 21-22). As such, it is not an appropriate basis for Rule 59(e) relief. *Arthur*, 500 F.3d at 1343. Nevertheless, in the interest of comprehensive review, the court will address each of Petitioner's arguments for reconsideration of this ineffective assistance claim.

Petitioner claims that his failure to inform his attorneys about the Haldol administration cannot be held against him because he was intellectually disabled and medicated at the time of trial. (Doc. # 59 at 19). As stated above, this argument ignores the well-established rule that the reasonableness of counsel's investigation depends in large measure on the information given to counsel by the defendant. *Strickland*, 466 U.S. at 691; *Chandler*, 218 F.3d at 1318-19. And, Petitioner's argument also disregards the fact that medical experts examined him before the penalty phase of the trial and did not report that he was being medicated. *See Smith v. State*, 112 So. 3d 1108, 1138-39 (Ala. Crim. App. 2012) ("*Smith III*"). At its core, this ineffective assistance claim asks the court to review counsel's investigation into Petitioner's mental and psychological health through the lens of hindsight and to determine that *any* reasonable attorney would have ordered a particular test for a particular medication based merely on Petitioner's flat affect. The Court of Criminal Appeals reasonably denied this hindsight-based claim.

Finally, Petitioner analogizes his ineffective assistance claim to one considered in *Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991), a pre-AEDPA opinion where the Eleventh Circuit affirmed a district court's grant of habeas relief premised on a deficient investigation into mitigating mental health evidence. *Id.* at 1479, 1500-05. Petitioner's purported analogy misses the mark. In *Blanco*, the defendant's attorney asked for a continuance after the guilt phase of the trial so that he could locate witnesses. *Id.* at 1500. During a four-day continuance, the defense

7

attorney did not meet with the potential witnesses who he had attempted to contact during the guilt phase of the trial. *Id.* at 1500-01. During habeas proceedings, the defendant showed that witnesses would have been available to testify during the penalty phase of his criminal trial about his difficult childhood and his history of seizures. *Id.* at 1501. Moreover, the defendant in *Blanco* presented evidence of organic brain damage and borderline intellectual functioning during his habeas proceedings that was not presented during the penalty phase. *Id.* In contrast to *Blanco*, Petitioner's attorneys investigated his mental and psychological health and presented to the jury evidence of his borderline intellectual functioning during the penalty phase. (*See* Doc. # 45 at 75) (quoting State Court Record, Vol. 34, Tab R-69 at 12-13). Because Petitioner's counsel performed an investigation into Petitioner's mental and psychological health and presented the results of that investigation to the jury and sentencing judge during the penalty phase proceedings, *Blanco* offers no support whatsoever for his ineffective assistance claim.

> **D. Petitioner Offers No Basis for Reconsidering the Denial of a Certificate of Appealability Regarding His *Ring* Claim Against Alabama's Capital Sentencing Scheme**

Petitioner argues that this court should grant him a certificate of appealability to challenge the constitutionality of the scheme under which he was sentenced to the death penalty because the Supreme Court's opinion in *Hurst v. Florida*, 136 S. Ct. 616 (2016), has placed the constitutionality of that scheme in doubt. (Doc. # 59 at 22-23). The court disagrees. A habeas petitioner is not entitled to a certificate of appealability if the petitioner's argument is foreclosed by binding precedent from the Supreme Court or the Eleventh Circuit. *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1261 (11th Cir. 2009). Such binding precedent exists here.

As discussed in the court's Memorandum Opinion (Doc. # 45 at 136-39), the Eleventh Circuit rejected a similar Sixth Amendment claim against Alabama's capital sentencing scheme

8

in *Lee v. Commissioner, Alabama Department of Corrections*, 726 F.3d 1172 (11th Cir. 2013). There, the Eleventh Circuit held that the petitioner's capital sentencing proceedings did not result in a *Ring* error because (1) the jury had convicted the petitioner of murder during a robbery or an attempted robbery, and (2) Alabama law provided that commission of a murder during a robbery or an attempted robbery was a statutory aggravating circumstance. *Id.* at 1197-98. Under that circumstance, the guilt-phase jury found the aggravating circumstance necessary to justify the death penalty. *Id.* (referring to the handling of such an aggravating circumstance under Ala. Code § 13A-5-45(e)). Here, as in *Lee*, the jury convicted Petitioner of murder during the course of a robbery and during a kidnapping, *Smith III*, 112 So. 3d at 1151, and commission of a murder while committing a robbery or a kidnapping was an aggravating circumstance justifying Petitioner's death sentence. Ala. Code § 13A-5-49(4). Therefore, binding Eleventh Circuit precedent forecloses Petitioner's Sixth Amendment *Ring* claim, and Petitioner is not entitled to a certificate of appealability for that claim. *Tompkins*, 557 F.3d at 1261.

Petitioner's argument that *Hurst* cast doubt on the ruling in *Lee* holds no water. Petitioner notes that in *Hurst* the Supreme Court rejected Florida's argument that a sentencing jury had necessarily found an aggravating circumstance justifying the death sentence when it recommended a death sentence. *See Hurst*, 136 S. Ct. at 622. But, the Supreme Court rejected that proposition because Florida statutory law required the sentencing court to make the findings necessary for a capital defendant to be eligible for the death penalty. *See id.* In contrast, Alabama statutory law provides that a capital defendant will be sentenced to life imprisonment unless at least one aggravating circumstance exists. Ala. Code § 13A-5-45(f). And, a guilt-phase jury verdict establishing an aggravating circumstance beyond a reasonable doubt constitutes proof of the aggravating circumstance for purposes of the sentencing proceedings.

9

Ala. Code § 13A-5-45(e). This same statutory scheme existed when Petitioner was sentenced in 1992. *See* Act of March 31, 1981, Act. No. 81-178, § 7(e) & (f), 1981 Ala. Laws 208 (codified at Ala. Code § 13A-5-45(e) & (f)). Therefore, *Hurst* is distinguishable from *Lee*, and *Lee* continues to bind this court.

### E. Petitioner Presents No Basis For Reconsidering the Court's Certificate of Appealability Decision

Finally, Petitioner argues that the court should reconsider its denial of a certificate of appealability for every issue presented in his § 2254 petition, except one. (Doc. # 59 at 25-26). Petitioner claims that the court erred by ruling on the certificate of appealability issues "in purely conclusory terms." (*Id.* at 26). The court discerns no error -- much less a manifest error -- in its reasoning on the certificate of appealability issue. The Eleventh Circuit and district courts within this circuit commonly address whether a habeas petitioner is entitled to a certificate of appealability in a summary manner. *See, e.g.*, *Bryant v. Sec'y, Fla. Dep't of Corr.*, 2017 WL 3446623 (11th Cir. July 21, 2017); *Jenkins v. Dunn*, 2017 WL 1927861, at *10 (N.D. Ala. May 10, 2017). And, as a general matter, when IFP status is denied, the parties (and the court of appeals)[6] can look to the detailed analysis of the issues in the initial opinion to see why issues presented in a habeas case are not debatable under the deferential standards of § 2254(d). In this case, the parties may readily do just that. (*See* Doc. # 45). Petitioner's request for the court to reconsider its decision on the scope of the certificate of appealability is thus due to be denied.

## III. Conclusion

For the reasons explained above, Petitioner's Motion to Alter or Amend Judgment (Doc. # 59) is due to be denied. An Order consistent with this Memorandum Opinion will be entered.

---

[6] Of course, Petitioner may move for the Eleventh Circuit to expand the scope of the certificate of appealability if he wishes to present additional issues to the Eleventh Circuit for review. *See Dell v. United States*, 710 F.3d 1267, 1272-73 (11th Cir. 2013).

**DONE** and **ORDERED** this October 10, 2017.

                                                      **R. DAVID PROCTOR**
                                                      UNITED STATES DISTRICT JUDGE